UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DIAN SPENCER, et al.,** | ) | CASE NO. 5:24-cv-00969-JRA |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE JOHN ADAMS |
| **CLEVELAND CLINIC** | ) | |
| **UNION HOSPITAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |

The matter pending before this Court is a *Motion for Summary Judgment* filed by Defendants Cleveland Clinic Foundation Main Campus and Cleveland Clinic Union Hospital (collectively "the Cleveland Clinic"). Doc. 58. Plaintiffs Dian Spencer, Jane Cummings, and Dawn Etta Cummings filed an opposition. Doc. 62. The Cleveland Clinic filed its reply brief. Doc. 67. Having reviewed the briefing, the Court hereby GRANTS the Cleveland Clinic's motion for summary judgment.

**I.  Facts**

On February 10, 2023, Plaintiff Dian Spencer, who is deaf, went to Union Hospital for medical care. She gave the front desk a written note stating that she needed to see a gastroenterologist. Although the note did not explicitly state that Spencer was deaf, Union Hospital provided her with video remote interpreting ("VRI") ASL interpretation to complete registration. Thereafter, Ms. Spencer's chart noted her need for an ASL interpreter.

Plaintiff Spencer's daughter, Plaintiff Jane Cummings ("J. Cummings"), arrived at Union Hospital on February 10, 2023 after her mother had been admitted. Plaintiff Spencer's other daughter, Dawn Cummings ("D. Cummings"), was out of state and did not visit Spencer at Union Hospital.

While at Union Hospital, Spencer received an X-ray, a review of her medical history, and a diagnosis indicating the need for additional tests. Spencer requested an interpreter but did not receive one; she instead communicated in writing with RN Lisa Cunningham and the doctor. Ultimately Spencer needed an MRI, which Union Hospital did not have, resulting in her transfer to the Cleveland Clinic Foundation's Main Campus ("CCF Main Campus").

On February 12, 2023, Spencer was transferred to CCF Main Campus, where she arrived in the early hours of February 13, 2023. Spencer was admitted by Dr. Tanveer Singh ("Dr. T. Singh"). Spencer communicated with Dr. T. Singh in writing, which was difficult. Spencer had access to VRI during the MRI, which occurred on February 13, 2023.

Dr. Poonam Singh ("Dr. P. Singh"), Spencer's attending physician, explained that Spencer had access to VRI in her room and she used it to communicate. Dr. P. Singh stated that the VRI was not always working so they communicated in writing, and that an in-person interpreter was not necessary. However, Spencer indicated to Nurse Ricky that she wanted an ASL interpreter.

On February 14th, 2023, D. Cummings was with Spencer during four VRI calls.

Spencer had surgery on February 15, 2023. CCF Main Campus attempted to use VRI to explain the procedure to her; however, VRI did not work. Spencer struggled to understand the interpreter, so D. Cummings helped explain the procedure to her. On a post-surgery check, Dr. P. Singh had an issue with VRI that was later corrected. During this period, there were five

"abandoned" VRI calls and three instances of "unavailable" interpreters. On February 17, 2023, Spencer was discharged from CCF Main Campus.

## II. Standards of Review

### A. Motion for Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show

more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### B. ACA Standard of Review

Pursuant to the Affordable Care Act ("ACA"),

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C.S. § 18116. The Sixth Circuit has explained the standard of liability for cases implicating 42 U.S.C. § 18116:

> As for the standard of liability, the language of the statute is a good place to start. The first sentence of § 1557[1] provides that "an individual shall not, on the ground prohibited under title VII of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 504 of the Rehabilitation Act of 1973, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

*Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 238 (6th Cir. 2019). "[T]he ACA does adopt the Rehabilitation Act's rights of action and remedies, including, for instance, limitations on compensatory or punitive damages." *Tomei v. Parkwest Med. Ctr.*, 24 F.4th 508, 514-15 (6th Cir. 2022). "[C]ourts analyze disability discrimination claims under the ADA, the Rehabilitation Act, and Ohio Revised Code Chapter 4112 pursuant to the same legal framework." *Miller v. Christ*

---

[1] Section 1557 was the non-discrimination statute when the ACA was enacted. It was later codified as 42 U.S.C. § 18116.

*Hosp.*, 2019 WL 6115211 (S.D. Ohio Nov. 18, 2019) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010)).

The ACA provides that entities operating or administering a program or activity shall take steps to ensure that communication with disabled individuals is as effective as others in accordance with 28 CFR §§ 35.160 through 35.164. 45 C.F.R. § 92.102(a). A recipient shall provide auxiliary aids, such as VRI services defined in 28 CFR 35.104 and 36.303(f), to afford individuals with "impaired sensory, manual, or speaking skills" equal opportunity to benefit from service. 45 C.F.R. §§ 92.102(b)-(b)(1)(i). Such exclusion, denial, or discrimination occurs when a hospital fails to provide "appropriate auxiliary aids and services" to a deaf patient, or a patient's deaf companion, "where necessary to ensure effective communication." 28 C.F.R. § 36.303(c)(1). *Miller v. Christ Hosp.*, No. 1:16-cv-937, 2019 U.S. Dist. LEXIS 199034, at *11 (S.D. Ohio Nov. 18, 2019) (citing *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017)).

If material facts are in dispute as to whether a defendant gave a plaintiff primary consideration to their requested auxiliary aid, provided equally effective means of communication, or created an undue financial burden for requested aid, then summary judgment is inappropriate. *Sparks*, 2024 U.S. Dist. LEXIS 50491, at *10 (quoting *Nieves v. Plaza Rehab. & Nursing Ctr.*, No. 1:20-cv-01191 (JLR) (OTW), 2023 U.S. Dist. LEXIS 129476, at *35 (S.D.N.Y. July 26, 2023).

### III. Analysis

#### A. Union Hospital:

On February 10, 2023, Spencer went Union Hospital for medical care. She gave a note to the receptionist to explain her conditions. The note did not explicitly state that she was deaf; however, it did convey to the medical staff that Spencer needed immediate attention. Very quickly after, it became clear that Spencer would need assistance. To accommodate her, Spencer was given

access to a VRI machine that would connect her to an ASL interpreter. Spencer was able to use the device to help her complete registration.

Spencer was then admitted to Union Hospital. On her chart, it was listed in bold "Needs Interpreter: AMERICAN SIGN LANGUAGE.". Spencer would be an inpatient at Union Hospital from February 10, 2023, to February 12, 2023. During that time, Spencer had seven VRI calls.

- February 10, 2023 – an eleven-minute call from 11:57 AM to 12:08 PM
- February 11, 2023 – an eight-minute call from 8:27 AM to 8:39 AM
- February 11, 2023 – a twenty-four-minute call from 1:05 PM to 1:29 PM
- February 11, 2023 – a seventy-eight-minute call from 3:02 PM to 4:20 PM
- February 12, 2023 – a fifteen-minute call from 10:26 AM to 10:41 AM
- February 12, 2023 – a nineteen-minute call from 8:49 PM to 9:07 PM
- February 12, 2023 – an eleven-minute call from 10:07 PM to 10:18 PM

At 1:35 PM on February 10 Spencer requested an interpreter but did not receive one and instead resorted to writing with RN Lisa Cunningham and the doctor. There was also a failed call around 7:10 PM when Dr. Jeffery Cameron attempted to speak with her. Those failed calls do not appear on the VRI logs provided by Union Hospital. Additionally, at one point during Spencer's stay at Union Hospital, the VRI failed, causing Spencer, J. Cummings, and the attending doctor to utilize voice-to-text on the phone.

### B. Cleveland Clinic Main Campus

Late on February 12, 2023, Spencer was transferred to CCF Main Campus. Issues began almost immediately. Dr. Tanveer Singh, Spencer's admitting physician for CCF Main Campus, communicated with her in writing. This was in spite of Spencer's primary preference already being well established at Union Hospital. Spencer did, in fact, prefer the ASL interpreters and was getting

that interpretation done via VRI. It was stated on her chart, "Needs Interpreter: AMERICAN SIGN LANGUAGE." Dr. Singh explained that patients coming from outside hospitals will have paper records instead of an electronic record inside of EPIC (Cleveland Clinic's system), despite Union Hospital being a part of Cleveland Clinic. CCF Main Campus's counsel raises the point that Union Hospital was not yet integrated, so they instead did a detailed history of Spencer by writing. Doc. No. 58, PageID# 3515.

### C. Analysis of both stays

The parties dispute whether consideration was given to Spencer's primary preference – VRI services – and whether effective communication resulted from the efforts made by the Cleveland Clinic.

> Under the applicable regulation, a public accommodation that uses VRI must provide:
>
> (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;
>
> (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;
>
> (3) A clear, audible transmission of voices; and
>
> (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI.

28 C.F.R. § 36.303(f). Spencer's argument that summary judgment is not appropriate hinges on her contention that there were occasions when the VRI either was unavailable for some reason or did not work perfectly. In that regard, this Court agrees with the Ninth Circuit when it "reject[ed] the notion that isolated technical glitches necessarily establish ineffective communication. *Accord Siegel v. Dignity Health*, No. CV-14-02561, 2019 WL 11720205, at *3 (D. Ariz. Mar. 26, 2019);

*Juech v. Child.'s Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 780 (E.D. Wis. 2018)." *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 871 (9th Cir. 2022)

Instead, the Court notes that extensive efforts were made to use VRI services during Spencer's stays at both Union Hospital and the Cleveland Clinic Main Campus.  Indeed, Spencer does not dispute the numerous calls that were successfully completed using the VRI services.  As such, the Court finds that there is no genuine issue of material fact regarding whether the Cleveland Clinic gave primary consideration to Spencer's choice of accommodation.

The Court is mindful of the fact that VRI services were not always available or 100% effective during Spencer's stay.  However, on those occasions, it is similarly undisputed that other accommodations were made to facilitate communication.  Those accommodations included talk-to-text use of a phone and note writing.  In evaluating those actions, the Court does not apply any categorial rule to determine whether effective communication was achieved but instead evaluates the totality of the circumstances on a case-by-case basis.  *Bax*, 52 F.4th at 870.  Here, Spencer's own testimony essentially defeats her claim.  When asked whether she understood her surgery, she indicated that she fully understood the communications, had no unanswered questions, and that the process made sense to her.[2]

Beyond Spencer's own testimony, the Court notes that it has reviewed the available evidence regarding all of the services that were utilized to communicate with Spencer during her stays at both hospitals.  There is little doubt that the process was not perfect.  However, the Court notes that communications with *any* patient are rarely perfect, and perfection is not the standard required

---

[2] The Court notes that Spencer has argued that Dr. Singh could not even fully interpret his own notes during this litigation.  However, Dr. Singh's ability to interpret those notes many months after they were generated offers no insight into the contemporaneous understanding that Spencer had during the back and forth during her hospital stay.

under the law. Instead, the Cleveland Clinic was required to give primary consideration to Spencer's choice of accommodation – VRI services – and it did. Moreover, the Cleveland Clinic was also charged with ensuring *effective* communication throughout Spencer's stay. It also achieved that end. Accordingly, Spencer's federal claim fails as a matter of law.

## IV. Conclusion

In closing, the Court acknowledges that any hospital stay imposes a significant amount of stress on both a patient and her family. That stress is undoubtedly enhanced when there is any struggle to communicate with care providers. However, the record here does not contain evidence that the Cleveland Clinic failed in its mission to accommodation Spencer's communication needs. As a result, she cannot successfully maintain a claim under the ACA. For the reasons set forth herein, Cleveland Clinic's motion for summary judgment is GRANTED. The Court declines to exercise supplemental jurisdiction over Spencer's state law claim, and it is hereby dismissed without prejudice. Judgment is entered in favor of Defendants, and this matter is dismissed.

IT IS SO ORDERED.

February 13, 2026                    /s/ *Judge John R. Adams*
                                     JUDGE JOHN R. ADAMS
                                     UNITED STATES DISTRICT COURT